UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BILL LEWIS,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | 3:09-cv-1381-ST<br><br>OPINION AND ORDER |

STEWART, Magistrate Judge:

**INTRODUCTION**

Plaintiff, Bill Lewis, filed this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act, 42 USC §416 and §423.  Plaintiff alleged a disability beginning July 18, 1994, based on a combination of impairments, including chronic migraine headaches, depression, anxiety, and personality disorders.  In his opening brief, plaintiff argued that the administrative law judge ("ALJ") had erred by relying on a prior unfavorable decision dated October 25, 1996, by failing to include all of his limitations (in particular, his chronic headaches and mental impairments) in

1 – OPINION AND ORDER

the residual functional capacity assessment, and by rejecting testimony by him and two lay witness (his mother and sister).

Before the Commissioner filed a response, the parties filed a Stipulated Motion to Remand (docket # 19).  This court granted that motion (docket # 20) and entered a Judgment on November 9, 2010 (docket # 21), remanding this case for further administrative proceedings pursuant to sentence four of 42 USC § 405(g) with instructions for a new ALJ to reevaluate the medical evidence and plaintiff's residual functional capacity, reassess plaintiff's testimony and the lay witness testimony, provide a new step four and five analysis if necessary, and, if warranted, obtain vocational expert testimony.

On January 1, 2011, plaintiff filed an Unopposed Application for Fees Pursuant to the Equal Access to Justice Act ("EAJA"), 28 USC § 2412(d) (docket # 22), supported by a Stipulation (docket # 23), in the amount of $6,050.00.  At that time, plaintiff's attorney represented that he had expended not less than 34.75 hours in connection with this appeal.  That motion was granted (docket # 24).

Plaintiff's attorney has now filed a Motion for Attorney Fees Pursuant to 42 USC § 406(b), seeking the sum of $11,648.00 for the work performed in this case before this court (docket # 26).  The Commissioner has given substantive consideration to the merits of this motion and found no basis to object (docket # 30).  For the reasons set forth below, plaintiff's motion is granted in the amount of attorney fees requested.

## STANDARDS

In Social Security cases, attorney fees may be awarded under both the EAJA and 42 USC § 406(b).  Congress enacted the EAJA in 1980 to permit recovery of attorney fees in those cases where "the Government's position in the litigation was not 'substantially justified.'"  *Gisbrecht*

*v. Barnhart*, 535 US 789, 796 (2002), citing 28 USC § 2412(d)(1)(A).  EAJA fees are determined by the time spent multiplied by a capped hourly rate.  *Id*, citing 28 USC § 2412(d)(2)(A).  In contrast, pursuant to 42 USC § 406(b)(1)(A), "the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment."  Such fee awards are paid from a claimant's retroactive benefits award.  *Id*.  In attorney fee motions under 42 USC § 406(b), the real party in interest is the attorney, not the claimant.  *Id* at 798 n6.  An attorney receiving a § 406(b) fee award may not seek any other compensation from a claimant.  *Id* at 796.  Accordingly, when a court approves both an EAJA fee and a § 406(b) fee, the claimant's attorney must refund to the claimant the smaller amount of the two awards.  *Id*.

The § 406(b) fee is not determined by the lodestar method which governs fee-shifting disputes.  *Id* at 800-01.  Instead, contingency fee agreements not exceeding 25% of the claimant's retroactive benefits are enforceable under § 406(b) subject only to the court's review "to assure that they yield reasonable results in particular cases."  *Id* at 807.  The claimant's attorney bears the burden to establish the reasonableness of the fee.  *Id*.

The Ninth Circuit has articulated four factors derived from *Gisbrecht* that district courts should use in determining whether a reduction from the contingency fee agreement is appropriate:

> 1. the character of the representation, specifically, whether the representation was "substandard;"
> 2. the results the representative achieved;
> 3. any delay attributable to the attorney seeking the fee; and
> 4. whether the benefits obtained were "not in proportion to the time spent on the case" and raise the specter that the attorney would receive an unwarranted windfall.

*Crawford v. Astrue*, 586 F3d 1142, 1151-53 (9th Cir 2009) (*en banc*).

3 – OPINION AND ORDER

In other words, the court is empowered to exercise discretion to ensure that the claimant is protected from having to surrender retroactive disability benefits in a disproportionate payment to counsel. *Id* at 1151, citing *Gisbrecht*, 535 US at 808.

## DISCUSSION

### I.     Contingency Fee Agreement

The first step in the *Gisbrecht* analysis is to examine the contingency fee agreement to determine if it is within the statutory 25% ceiling of § 406(b). On November 16, 2009, plaintiff executed a contingency fee agreement which provides for payment of a fee to his attorney equal to 25% of any past-due benefits awarded (docket # 27-2). This falls within the statutory limits, and the record reveals no evidence of fraud or overreaching in the making of this agreement. *Id*.

The next step is to confirm that the requested fee does not exceed the 25% ceiling of § 406(b). Plaintiff's attorney has submitted two awards dated October 9, 2011, of past due benefits in the sums of $45,140.00 and $1,452.00 for April 2003 through March 2011 (docket # 27-1). The attorney fee request of $11,648.00 is 25% of the past due benefits and, thus, falls within the statutory limit.

### II.    Reasonableness Determination

Having determined that the contingent fee specified in the agreement is within the statutorily mandated ceiling and that the amount of attorney fees sought does not exceed that ceiling, the court turns to its primary inquiry, the reasonableness of the request.

#### A.    Character of the Representation

Substandard performance by a legal representative may warrant a reduction in a § 406(b) fee award. *Gisbrecht*, 535 US at 808; *Crawford*, 586 F3d at 1151. On this point, *Gisbrecht* cites *Lewis v. Sec'y of Health and Human Servs.*, 707 F2d 246 (6th Cir 1983), where, because of the

poor quality of legal representation, the Sixth Circuit vacated and remanded the trial court's 25% attorney fee award. In *Lewis*, the substandard representation consisted of counsel's poor preparation for hearings, failure to meet briefing deadlines, submission of court documents void of legal citations, and overbilling the claimant. *Lewis*, 707 F2d at 248-50.

The representation by plaintiff's attorney here was not substandard. Rather, it demonstrated competency in and familiarity with the subject matter. This is clearly evidenced by the fact that the Commissioner saw fit to stipulate to a remand of the matter based solely on the initial brief filed by plaintiff's attorney in this matter. Thus, no reduction is warranted due to the character of the representation.

### B.     Results Achieved

Plaintiff's attorney sought a remand for an award of benefits for his client. Instead, this court ordered a remand for further proceedings based on the stipulation of the parties. However, the remand ultimately resulted in an award of benefits for plaintiff.

The circumstances of achieving that favorable result must be considered. The Commissioner agreed with plaintiff that the ALJ had erred and that the case should be remanded. Thus, plaintiff's attorney faced a less daunting challenge here than if the Commissioner had vigorously defended the ALJ's decision or argued to uphold the ALJ's decision because the errors could not be reversed under the controlling standard of review.

While the remand for additional proceedings eventually resulted in an award of benefits, that outcome cannot be viewed in isolation nor can it be presumed always to require a fee award of the full 25%. If obtaining benefits always supported awarding fees for the full 25%, it would make the other *Gisbrecht* factors irrelevant and render perfunctory the trial court's assigned task of "making reasonableness determinations in a wide variety of contexts[.]" *Gisbrecht*, 535 US at

5 – OPINION AND ORDER

808. The favorable result supports the attorney fee request, but does not compel an award of the full 25% requested.

### C.    Dilatoriness

A § 406(b) fee award may be reduced for delays in the proceedings attributable to the claimant's attorney, so that the attorney "will not profit from the accumulation of benefits" while the case is pending. *Id*, citing *Rodriquez v. Bowen*, 865 F2d 739, 746-47 (6th Cir 1989). Here plaintiff's attorney filed a single unopposed motion for an extension of 45 days to file his opening brief due to a very heavy workload, recent vacations, and other conflicting deadlines (docket # 10). Accordingly, no reduction for delay is warranted.

### D.    Proportionality of Benefits Awarded to Time Spent

A § 406(b) award may be reduced if the benefits awarded to the claimant "are not in proportion to the time spent on the case" by the claimant's attorney. *Crawford*, 586 F3d at 1151, citing *Gisbrecht*, 535 US at 808. In that regard, the court may consider time records, as well as the attorney's normal hourly fee in non-contingent matters.

According to the prior EAJA fee request, plaintiff's attorney spent 34.75 hours on this case to file two main documents, the Complaint (using a standard format) and an opening brief (20 pages in length). The opening brief contains a significant amount of standard content for a Social Security plaintiff's brief: a short statement of jurisdiction, the appropriate standard of review, and a description of the sequential five-step process. It also includes case-specific content: plaintiff's medical history set forth in a detailed, well-organized statement and arguments as to the errors committed by the ALJ. The record also contains a lengthy administrative transcript, the Commissioner's four-page answer, and the Commissioner's two-

page stipulation to remand, accompanied by a proposed order and judgment, all of which plaintiff's attorney read and considered.

The time records indicate that the plaintiff's primary attorney, Tim Wilborn, was assisted by Betsy Stephens. Mr. Wilborn specializes in representing disability claimants and, therefore, does not have an hourly rate, but has charged $375.00 per hour for consulting or expert witness services.[1] He expended 13.25 hours reviewing plaintiff's file, assessing the merits of an appeal, drafting and serving the Complaint, reviewing documents filed in the case, corresponding and e-mailing with plaintiff, Ms. Stephens, and the Commissioner's attorneys, completing work on the opening brief, and reviewing court documents.

The time records identify Ms. Stephens as "Attorney," but no other information is provided about her, such as her year of admission to the Oregon State Bar or some other state bar, how many years she has practiced law, how much time she has spent on Social Security cases, or her regular billable rate. She spent 21.5 hours, about two-thirds of the total time expended on this case, to review plaintiff's file and draft the opening brief over a six-day period. It appears that Ms. Stephens is a less experienced attorney utilized to lessen the hours needed by Mr. Wilborn to spend on the matter. The number of hours expended by Ms. Stephens were likely more than would have been incurred by Mr. Wilborn had he taken the primary role in drafting the opening brief, thereby resulting in an increase of the total number of hours required to prepare the opening brief. However, all of the pleadings filed with the court by both attorneys were completed in an acceptable, workman-like manner.

---

[1] Elsewhere Mr. Wilborn has stated that his non-contingent hourly rate for consulting work is $300.00 per hour. *See Breedlove v. Comm'r*, No. 07-cv-1743-AC, Memorandum in Support of Plaintiff's Motion for Approval of Attorneys Fees Pursuant to 42 USC § 406(b) (docket # 23), p. 4 n5.

7 – OPINION AND ORDER

A review of these pleadings, as well as the transcript and other entries in the record, compels the conclusion that this case was unremarkable with regard to the administrative history of plaintiff's Social Security application, as well as the medical records relevant to his case. Similarly, the issues involved were common and not complex, and were resolved relatively quickly with a stipulated remand. As noted by Judge Mosman, "[t]here is some consensus among the district courts that 20-40 hours is a reasonable amount of time to spend on a social security case that does not present particular difficulty." *Harden v. Commissioner*, 497 F Supp2d 1214, 1215 (D Or 2007) (citing cases). Judge Mosman agreed that absent unusual circumstances or complexity, "this range provides an accurate framework for measuring whether the amount of time counsel spent is reasonable." *Id* at 1216. Based on this range, despite the stipulated remand, the number of hours expended by both Mr. Wilborn and Ms. Stephens is not inherently unreasonable.

The attorney fees requested of $11,648.00 results in an effective hourly rate of $335.19. Based on the Oregon State Bar 2007 Economic Survey, for all attorneys in Portland in private practice in the "other" category, the average hourly rate is $242.00 and the median hourly rate is $222.00, and for all Portland attorneys, the average hourly rate is $244.00 and the median hourly rate is $230.00. According to the January 2011 Oregon State Bar Bulletin, a survey by CT Tymetrix, a management consulting firm for in-house law departments and claims organizations, found that average billing rates increased 17% between 2007 and 2009.[2] Plaintiff's attorney also points out (although without citing the source) that during this same period of time, the CPI-U, a measure of inflation, is up more than 11.2%. Under a traditional lodestar approach, an effective

---

[2] Available at http://www.osbar.org/publications/bulletin/11jan/briefs.html. The full report can be found at www.realratereport.com.

8 – OPINION AND ORDER

hourly rate of $335.19 is higher than that range, even taking billing or cost-of-living increases into consideration.

However, the goal under § 406(b) is not to compensate attorneys strictly for time expended as under lodestar approach, but to compensate them commensurately with the results achieved. To prevent a "windfall" to the claimant's attorney, the court must compare the time expended to the risk undertaken by the attorney in agreeing to represent the claimant. According to Mr. Wilborn, this case presented an average risk with a high risk of loss and delay, but he offers no explanation as to how he made that assessment. Instead, he devotes much of his discussion on the general risk of nonpayment and underpayment in contingency cases and to constructing the hourly fee needed in successful cases to compensate him for these risks.

As Magistrate Judge Papak recently posited as a way to assess proportionality, "a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result." *Kovacevic v. Comm'r Soc. Sec. Admin.*, No. 05-CV-512-PK, 2010 WL 1406450, at *6 (D Or March 2, 2010). But as he also acknowledges, this approach leaves open the questions of how to determine pre-litigation risk and how to avoid overcompensating that risk in order to avoid a windfall. To a claim that was significantly less risky than the average claim, Magistrate Judge Papak applied a risk factor "potentially as high as 40%." *Id* at *7. Using $222.00 as the benchmark hourly rate, a 40% risk of winning results in a 2.5 multiplier (100/40) for an effective hourly of $555.00, which is significantly higher than the requested effective hourly rate. Even if the risk of winning is higher, the requested effective hourly rate here is not out of line.

Thus, this court concludes that an award of attorney fees of $11,648.00 is reasonable in this case.

9 – OPINION AND ORDER

**ORDER**

For the reasons set forth above, plaintiff's Motion for Attorney Fees Under 42 USC § 406(b) (docket # 26) is GRANTED in the sum of $11,648.00 (25% of the retroactive benefits awarded) from which the previously awarded EAJA fee of $6,050.00 should be subtracted.[3]

DATED this 16 day of December, 2011.

/s Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

---

[3] *Jackson v. Comm'r of Soc. Sec'y*, 601 F3d 1268, 1272 (11th Cir 2010) (obligation to issue the required refund is the attorney's; the EAJA Savings Provision does not require courts to take action with respect to the refund).

10 – OPINION AND ORDER